UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

HORIZON SHIPBUILDING, INC. &
AMERICAN LONGSHORE MUTUAL
ASSOCIATION LTD.,

      Plaintiffs,

v.                                    Case No. 3:23cv24755-MCR-HTC

ALBERT JACKSON,

      Defendant.

_____/

<u>REPORT AND RECOMMENDATION</u>

Plaintiffs Horizon Shipbuilding, Inc., and American Longshore Mutual Association, Ltd.'s (collectively, "Horizon") initiated this civil action by filing a motion to dismiss two claims Defendant Albert Jackson filed under the Longshore and Harbor Workers' Compensation Act ("LHWCA").  Doc. 1.  The motion is based on Administrative Law Judge ("ALJ") Angela Donaldson's Order Certifying Facts to District Court with Recommendation of Dismissal of Longshore Proceeding ("Certification Order").[1]

---

[1] There does not appear to be any specified procedures for how an ALJ's certified facts should be brought to the attention of the district court.  *See A-Z Int'l v. Phillips*, 179 F.3d 1187, 1194 n.9 (9th Cir. 1999) (suggesting that one procedure might be to initiate a civil action with a complaint).  In some cases, a miscellaneous or civil action is opened with the filing of the ALJ's certification order; in others the employer has filed a complaint or, as Horizon did here, a motion to dismiss.  *See In re Jackson Kelly PLLC*, 2:05-cv-853 (S.D. W.Va. 2005) (opened as a civil action with a

After reviewing the parties' submissions, Docs. 1, 12, & 14, and the relevant law, and holding a hearing on April 25, 2024, which Jackson failed to attend, the undersigned concludes Horizon's motion should be GRANTED and Jackson's LHWCA claims should be DISMISSED WITH PREJUDICE based on his willful failure to comply with the orders of the ALJ requiring him to attend a medical exam and execute authorizations for the release of information.

Also pending are Horizon's motion to strike, Doc. 13, Jackson's "Notice of a Constitutional Challenge to a Statute," Doc. 11, which argues a regulation prohibiting parties from recording hearings before the ALJ is unconstitutional, and Jackson's motion to dismiss this action, Doc. 12. The motion to strike should be GRANTED, as the constitutional claim is not properly before the Court. Jackson's motion to dismiss (which the Court reads as a response to Horizon's motion to dismiss) should be DENIED.

## I.    Background and Procedural History

Jackson worked as a pipe welder for Horizon from September 21, 2016, to June 5, 2017. Doc. 12 at 4. After injuring his left knee on February 27, 2017, he

---

certification order); *In re D'Acquisto*, 2:04-mc-196 (E.D. Pa. 2006) (opened as a miscellaneous action with a certification order); *Triple A Machine Shop Inc. v. Olsen*, 3:07-cv-2371 (2007) (opened as a civil action with a complaint which incorporated the certification order).

filed a workers' compensation claim under the LHWCA on April 20, 2017.[2]  After holding a hearing on June 5, 2019, ALJ J. Alick Henderson awarded Jackson compensation and ongoing medical treatment for his left knee injury.[3]  Doc. 12-4 at 4-14.

A dispute later arose between Horizon and Jackson regarding whether the medical treatment for his left knee injury was reasonable (OALJ Case No. 2022-LHC-01332).  In addition, Jackson filed a separate LHWCA claim alleging he suffered injuries to his left arm and hand while working for Horizon (OALJ Case No. 2023-LHC-00118).  Through a January 24, 2023, order, the left knee claim and the left arm and hand claim were consolidated for purposes of discovery.  Doc. 1-1 at 8.

As part of the proceedings, two issues came into dispute which are relevant to the Certification Order.  First, ALJ Donaldson ordered Jackson to attend an independent medical exam.  Second, she ordered Jackson to sign certain authorizations for the release of his medical, social security administration, wage, and employment information.  Jackson disagreed with the ALJ's orders, contending

---

[2] The LHWCA "establishes a comprehensive federal workers' compensation program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death."  *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994) (citation omitted).

[3] Jackson appealed ALJ Henderson's October 7, 2019, order, asserting his average weekly wage had been miscalculated.  The Benefits Review Board agreed and modified the calculation of Jackson's average weekly wage.  Doc. 12-5.

that it was unreasonable for the ALJ to require him to travel more than 75 miles for the medical exam and the authorizations were overly broad. Jackson unsuccessfully sought reconsideration of the initial order and unsuccessfully appealed the ALJ's orders. Nonetheless, Horizon contends Jackson failed to comply with those orders. Thus, Horizon filed a motion to dismiss with the ALJ and the ALJ certified facts to this Court and recommended dismissal with prejudice as a sanction for Jackson's non-compliance with her orders.

On December 15, 2023, Horizon initiated this action in federal court by filing a "Motion for Order Dismissing Claim with Prejudice Pursuant to Longshore and Harbor Workers' Compensation Act 33 U.S.C. Section 927(b)." Doc. 1. Horizon asks this Court to find Jackson failed to comply with the ALJ's discovery orders and dismiss his LHWCA claims with prejudice as a sanction. Jackson filed a "Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)," Doc. 12, which is, in effect, a response in opposition to Horizon's motion.

On March 25, 2024, the Court scheduled a hearing for April 25, 2024, to allow the parties to present argument and submit evidence regarding the ALJ's Certification Order. Doc. 16. Horizon's counsel appeared at the hearing, but Jackson did not.[4] Because Jackson did not attend or present evidence at the hearing, and

---

[4] Notice of the hearing was sent to Jackson's address of record, which is the same address Horizon's counsel had for him and at which he had previously received orders from the Court. *See* Doc. 10.

none of his written submissions contain evidence which contradicts the ALJ's findings of fact in the Certification Order, those findings are accepted as true.

## II.    Discussion

Under 33 U.S.C. § 927(b), if any person in proceedings before an ALJ disobeys or resists any lawful order, the ALJ shall certify the facts to the district court having jurisdiction in the place in which she is sitting. 33 U.S.C. § 927(b). The district court shall thereupon in a summary manner hear the evidence as to the acts complained of, and if the evidence so warrants, punish such person in the same manner and to the same extent as for a contempt committed before the court. *Id.*; *see also Stevedoring Servs. of Am., Inc. v. Eggert*, 953 F.2d 552, 555 (9th Cir. 1992) ("[P]ursuant to 33 U.S.C. § 927(b), the district courts may punish as contempt of court any disobedience or resistance to a lawful order or process issued in the course of administrative proceedings under the Act.").

In *Triple A Machine Shop Inc. v. Olsen*, 2008 WL 131665, at *2 (N.D. Cal. Jan. 11, 2008), the court set forth the method by which it would review an ALJ's certification of facts. The court indicated it would consider the ALJ's certification of facts as the statement of a prima facie case and, "if there is no other evidence appearing before the district court and the certified facts, if true, would support a

---

Furthermore, Jackson never communicated to the Court that he could not attend the April 25 hearing.

violation, then the district court may, if it deems the burden of persuasion to have been satisfied, find a party in contempt." *Id.* (citing *Proctor v. State Gov't of North Carolina*, 830 F.2d 514, 521-22 (4th Cir. 1987)).[5]   However, if either party introduced evidence, the court would consider that evidence together with the certified facts in determining whether a finding of contempt can be sustained.  *Id.* (citing *Proctor*, 830 F.2d at 522).

## A.    Findings of Fact

Consistent with § 927(b), the undersigned set the matter for an evidentiary hearing on April 25, 2024, and enters the following findings of fact:[6]

1.    On April 10, 2023, Horizon filed a motion to compel Jackson to: (1) attend a medical exam by a physician chosen by Horizon; (2) execute authorizations for the release of medical, social security disability, wage, and employment information; and (3) provide updated discovery responses, as many of Jackson's responses referenced responses he provided about four years earlier during the initial investigation of his left knee injury claim.  Doc. 1-2.

2.    On May 18, 2023, ALJ Angela Donaldson issued an order granting in part and denying in part Horizon's motion to compel.  Doc. 1-3.  Specifically, ALJ

---

[5] *Proctor* interpreted "now-outdated language in the Federal Magistrates Act, see 28 U.S.C. § 636(e) (1992), which mirrored the text of § 927(b)."  *Olsen*, 2008 WL 131665, at *2.
[6] *See In re D'Acquisto*, 403 F. Supp. 2d 389, 390 (E.D. Pa. 2005) (holding that a district court is required to conduct an evidentiary hearing and make its own factual findings on contempt).

Donaldson concluded: (1) Jackson needed to provide more complete responses to certain interrogatories and requests for production or explain that no updated information was available; (2) Jackson did not need to execute the authorizations as currently drafted because they were not sufficiently limited in scope with respect to the injuries and period of time at issue; and (3) the issue of attending the medical exam was not ripe because Horizon had not served a notice of physical exam pursuant to 29 C.F.R. § 18.62. *Id.* at 3-5.

3.      Horizon then provided Jackson with new authorizations with a more limited scope and notified him that his medical exam was being scheduled for July 19, 2023, in Mobile, Alabama. Doc. 1-5 at 10, 13-17. During a July 6, 2023, conference call between Judge Donaldson and the parties, Jackson argued that requiring him to travel from his home in Pensacola, Florida, to Mobile for the medical exam was unreasonable. Doc. 1-4 at 25-27. The modified authorizations and Jackson's deposition, which was scheduled for July 25, 2023, in Pensacola, were also discussed.[7] *Id.* at 23-25, 33-41, 43.

4.      On July 12, 2023, Jackson advised Horizon he would not sign the modified authorizations. Doc. 1-5 at 23-24. On July 14, 2023, Horizon moved to compel Jackson to attend the medical exam and execute the modified authorizations.

---

[7] When Jackson appeared for his deposition on July 25 in Pensacola, he insisted on making his own recording of the deposition. Doc. 1-6. Because this contravened the policy of the court reporter, the deposition did not go forward.

Doc. 1-5.  Horizon also rescheduled the medical exam from July 19 to August 30 to avoid a cancellation fee.  Doc. 1-5 at 2-3.  Jackson responded in opposition to the motion.  Doc. 12-17 at 1-11.

5.      On July 31, 2023, ALJ Donaldson issued an order granting Horizon's July 14 motion to compel.  Doc. 1-7.  Donaldson found that requiring Jackson to attend a medical exam in Mobile was reasonable.  Doc. 1-7 at 4.  She also found requiring Jackson to sign the modified authorizations was appropriate because the authorizations were reasonably tailored and limited in scope and would make discovery less burdensome.  Doc. 1-7 at 5.  Thus, Donaldson ordered Jackson to sign the authorizations and provide them to Horizon by August 7 and to attend the medical exam in Mobile on August 30.  Doc. 1-7 at 5-6.  The July 31 order also advised the parties that failing to comply with a discovery order could result in sanctions.  Doc. 1-7 at 2.

6.      Jackson filed a motion for reconsideration on August 10, 2023, Doc. 1-8, which Horizon opposed, Doc. 1-9.  ALJ Donaldson denied the motion on August 18, but extended the deadline for Jackson to sign the authorizations to August 25.  Doc. 1-10.  The August 18 order warned Jackson that failing to comply with orders

related to discovery could result in sanctions, including the dismissal of his claims.[8] Doc. 1-10 at 2-3 (citing 29 C.F.R. § 18.57(b)).

7.      On August 24, 2023, Jackson told Horizon he continued to believe that traveling to the medical exam and deposition, which was also scheduled for August 30 in Mobile, was unreasonable.[9] Doc. 1-15 at 24-25.  ALJ Donaldson scheduled a conference call for August 29 to discuss Jackson's failure to comply with discovery orders.  Doc. 1-13.  Jackson did not join the call.  And when the ALJ's assistant contacted him after the conference call began, he stated he would not be participating.  Doc. 1-13 at 8.

8.      Jackson did not attend the medical exam in Mobile on August 30.[10]

9.      On October 4, 2024, ALJ Donaldson ordered Jackson to show cause why facts should not be certified to the district court for an order of dismissal due to his failure to comply with discovery orders.  Doc. 1-18.  Jackson filed a response to the show cause order on October 26, 2023, which again challenged the scope of the

---

[8] On August 25, 2023, Jackson filed a "Response to [Horizon's] Motion in Opposition to Claimant's Motion to Reconsider and Motions for a Protective Order and Sanctions."  Doc. 1-11. The ALJ construed the filing as a second request for reconsideration or, alternatively, as a reply filed without leave of court.  Doc. 1-12.  The ALJ denied the relief sought by Jackson, finding "[t]he rules do not permit such motion (or reply)[.]"  Doc. 1-12.

[9] Horizon located a court reporter in Mobile who would not object to Jackson making his own recording of the deposition.

[10] On August 31, however, Jackson did attempt to appeal the ALJ's July 31 and August 18 orders. Doc. 1-14.  On October 30, 2023, the Benefits Review Board dismissed Jackson's appeal.  Doc. 1-16.  The Board concluded no due process considerations warranted departing from its general practice of not reviewing interlocutory discovery orders.  *Id.* at 5-6.

authorizations and the reasonableness of attending a medical exam in Mobile.  Doc. 1-19.

**B.    Dismissal as a Sanction**

Based upon the above findings of fact, the Court finds the sanction of dismissal is warranted.  After considering the parties' respective positions, ALJ Donaldson issued an order which required Jackson to execute the authorizations and attend the medical exam in Mobile.  Furthermore, ALJ Donaldson warned Jackson that failing to comply with her orders could result in the dismissal of his LHWCA claims.  Nevertheless, Jackson refused to execute the authorizations or attend the exam; he steadfastly maintains that traveling to Mobile and executing the authorizations is unreasonable.  However, it is well established that "an order issued by a court ... must be obeyed by the parties until it is reversed by orderly and proper proceedings ... and until its decision is reversed for error by orderly review ... its orders ... are to be respected, and disobedience of them is contempt of its lawful authority, to be punished."  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293-94 (1947).  The ALJ's orders[11] in this case were not reversed and, thus, Jackson was not free to disregard them even if he disagreed with them.

---

[11] The undersigned also finds the ALJ's orders were lawful.  First, a worker making a claim under the LHWCA may be required to submit to "an examination by a physician selected by the employer."  33 U.S.C. § 907(d)(4); *see also* 29 C.F.R. 18.62(a)(1) ("A party may serve upon another party whose mental or physical condition is in controversy a notice to attend and submit

Furthermore, Jackson's refusal to comply with the ALJ's discovery orders prevents Horizon from contesting Jackson's LHWCA's claims.  As the ALJ noted, a claimant under the LHWCA who establishes a prima facie case is entitled to a rebuttable presumption their injury is compensable under the Act. *See Universal Mar. Serv. Corp. v. Dir., OWCP*, 137 F. App'x 210, 211 n.1 (11th Cir. 2005) ("To establish a *prima facie* case and receive the benefit of this presumption a claimant must show (1) that he suffered a harm or injury and (2) that the alleged injury arose out of and occurred in the course of employment.") (citation omitted).  Once the claimant establishes a prima facie case and the presumption is invoked, the burden shifts to the employer to present "substantial evidence establishing the absence of a connection between the injury and the employment."  *Port Cooper/T. Smith Stevedoring Co., Inc. v. Hunter*, 227 F.3d 285, 288 (5th Cir. 2000).  This evidence typically consists of an expert medical opinion. *See Brown v. Jacksonville Shipyards*

---

to an examination by a suitably licensed or certified examiner.").  "Upon objection by the person to be examined the requesting party may file a motion to compel a physical or mental examination." 29 C.F.R. § 18.62(b).  The location of the exam must be reasonable for the claimant, but no maximum distance for the claimant to travel is specified.  *See* 33 U.S.C. §§ 907(d)(4), 919(h).  Thus, while Jackson may have been inconvenienced by the drive, the ALJ neither abused her discretion nor acted unlawfully.  Second, many courts, including this Court, have concluded that compelling a party to execute authorizations for the release of medical and other information is a permissible method of discovery.  *See, e.g.*, *Smith v. Escambia Cty. Sheriff's Office*, 2006 WL 8443369, at *2 (N.D. Fla. Mar. 29, 2006).  Furthermore, the Benefits Review Board has held: (1) ALJs "have broad discretion in authorizing parties to obtain relevant evidence"; (2) medical releases are a permitted method for discovery; and (3) ALJs "have the authority to compel claimants to sign narrowly tailored medical releases when it is reasonable under the circumstances to do so."  *Mugerwa v. Aegis Defense Servs. & Ins. Co. of Pa.*, Ben. Rev. Bd. No. 17-0407, 2018 WL 2085885, *1 (Apr. 27, 2018).

*Inc.*, 893 F.2d 294, 297 (11th Cir. 1990) (finding "there was no direct concrete evidence sufficient to rebut the statutory presumption" because "[n]one of the physicians expressed an opinion ruling out the possibility that there was a causal connection between the accident and Brown's disability").

Because Jackson refuses to execute the authorizations and attend the medical exam ordered by the ALJ, Horizon cannot obtain the information which may provide the substantial evidence necessary to rebut the presumption of compensability. Thus, Jackson's conduct is preventing his claims from being decided on their merits. *See Ports Am. Outer Harbor Terminal/Ports Ins. Co. Inc. (NOCAL) v. Hayes*, 2018 WL 5099272, at *5 (N.D. Cal. Mar. 7, 2018) (agreeing with ALJ that "any sanction less than dismissal would not be appropriate under these circumstances because [claimant's] failure to cooperate with the testing in the [medical exam] effectively blocked [employer's] ability to develop evidence to rebut the statutory presumption of compensability"), *report and recommendation adopted*, (N.D. Cal. Mar. 27, 2018).

Furthermore, the imposition of lesser sanctions is not warranted. Jackson argued multiple times to ALJ Donaldson that he should not be required to execute the authorizations or attend the medical exam in Mobile. The ALJ considered Jackson's arguments, rejected them, and ordered him to sign the authorizations and attend the medical exam. Despite clear orders from the ALJ, which included

warnings that sanctions could be imposed, Jackson refused, showing a willful disregard for those orders. *See Taylor v. Bradshaw*, 742 F. App'x 427, 434 (11th Cir. 2018) ("While dismissal of claims should be a 'last resort,' it is an appropriate sanction if 'noncompliance with discovery orders is due to willful or bad faith disregard for those orders.'") (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1556 (11th Cir. 1986)).  Moreover, Jackson has not presented any evidence to this Court indicating the sanction of dismissal is inappropriate, and his failure to attend the April 25, 2024, hearing shows a continued disregard for legal proceedings.  Thus, nothing indicates Jackson will attend the medical exam or execute the authorizations if a sanction other than dismissal was imposed.

Jackson raises several other arguments for why the dismissal of his LHWCA claims is inappropriate.  None of these arguments are availing.  First, he claims the ALJ failed to resolve his motions for a protective order and, thus, sanctions are inappropriate.  Doc. 12 at 3.  However, he has not presented any evidence of these purportedly unresolved motions for protective order.

Jackson's response to Horizon's July 14 motion to compel, Doc. 12-17 at 1-11, and his August 25 second motion for reconsideration, Doc. 1-11, included requests for a protective order.  ALJ Donaldson's July 31 order granting Horizon's motion to compel specifically noted Jackson asked for a protective order.  Doc. 1-7 at 3 (Jackson "seeks a protective order against traveling to the examination.").

Nevertheless, she concluded requiring Jackson to attend the medical exam in Mobile was reasonable. Doc. 1-7. Furthermore, while Jackson's August 25 second motion for reconsideration, Doc. 1-11, was denied as an unauthorized filing, Doc. 1-12, it raised the same arguments against attending the medical exam and executing the authorizations the ALJ had previously considered and rejected in her July 31 order and August 18 order denying Jackson's motion for reconsideration. *See* Doc. 1-7 (rejecting Jackson's arguments regarding traveling to Mobile and the scope of the authorizations); Doc. 1-10 (rejecting Jackson's argument regarding the scope of the authorizations).

Furthermore, the ALJ also addressed Jackson's argument regarding motions for protective orders in the Certification Order, noting: (1) the docket reflected no such unadjudicated motions; and (2) to the extent Jackson sought protective orders when opposing Horizon's motions to compel, the ALJ adjudicated those requests in her May 18, 2023, and July 31, 2023, orders. Doc. 1-1 at 11 n.6. In sum, Jackson's arguments against attending the medical exam and executing the authorizations were considered and rejected by the ALJ, and there is no evidence his requests for a protective order were ignored.

Next, Jackson devotes several pages of his opposition to arguing he properly supplemented his responses to Horizon's interrogatories and requests for production. Doc. 12 at 2-3, 6-8. However, the ALJ's Certification Order and recommendation

for dismissal were not based on Jackson's responses to interrogatories and requests for production. Instead, the ALJ focused on Jackson's failure to comply with her orders regarding executing authorizations and attending a medical exam. Doc. 1-1 at 12-14. Thus, whether Jackson supplemented his responses to Horizon's discovery requests is not relevant to whether his LHWCA claims should be dismissed.

Lastly, Jackson argues 33 U.S.C. § 927(b) does not give a district court subject-matter jurisdiction to sanction him for costs Horizon incurred during discovery in the LHWCA proceedings. Doc. 12 at 10-11. Although Horizon advised Jackson during the LHWCA proceedings it would seek monetary sanctions against him if he failed to attend his deposition or the medical exam, Doc. 1-15, at 16, 26, in this action Horizon is not seeking the costs it incurred; instead, it is only seeking the dismissal of his LHWCA claims with prejudice. *See* Doc. 1 at 10. Thus, the Court is not considering whether Jackson is liable for Horizon's discovery costs.

### C.    Jackson's Notice of a Constitutional Challenge to a Statute

In addition to opposing Horizon's motion to dismiss his LHWCA claims, Jackson filed a "Notice of a Constitutional Challenge to a Statute," Doc. 11, which indicates he wants to challenge the constitutionality of 29 C.F.R. § 18.86, a regulation which prohibits parties, witnesses, and spectators "from using video or audio recording devices to record hearings" before the ALJ. On a conference call with Horizon and the ALJ, Jackson indicated he wanted to record all proceedings

related to his LHWCA claims.  In her July 31 order granting Horizon's motion to compel, ALJ Donaldson cited 29 C.F.R. § 18.86 and concluded it prohibited Jackson from making private recordings of conferences and hearings.  Doc. 1-7 at 6-7.

Horizon moves to strike Jackson's notice, arguing his constitutional challenge is unrelated to their action to dismiss Jackson's LHWCA claims.  The undersigned agrees.  As discussed above, Horizon's motion to dismiss Jackson's LHWCA claims is based on his failure to comply with ALJ Donaldson's orders compelling him to attend a medical exam and execute authorizations.  Jackson's failure to comply with those discovery orders is not related to his desire to record proceedings related to his LHWCA claims.  Indeed, Jackson's challenge to 29 C.F.R. § 18.86 cannot be brought as a counterclaim against Horizon in this case because Horizon is not responsible for enforcing that regulation.[12]  And, as Horizon correctly notes, entertaining Jackson's challenge to 29 C.F.R. § 18.86 would cause Plaintiffs to incur additional attorney's fees and delay resolution of this case.  Based on the foregoing, Horizon's motion to

---

[12] Jackson tried to raise this issue in an appeal to the Benefits Review Board.  In its October 30, 2023, order dismissing Jackson's appeal, the Board found: (1) "[i]t is well established there is no constitutional right, under the First Amendment, to record judicial or administrative government proceedings, especially if the proceeding in question is open to the public and/or the person seeking permission to record is granted the opportunity to attend the hearing or proceeding in question"; and (2) "It was reasonable for the ALJ to extend such a prohibition to video conferences and teleconferences as all are part of the same proceedings."  Doc. 1-16 at 6.

strike Jackson's "Notice of a Constitutional Challenge to a Statute" should be granted.[13]

Accordingly, it is RECOMMENDED:

1.    That Horizon's motion for order dismissing Jackson's LHWCA claims, Doc. 1, be GRANTED, and the claims in OALJ Case No. 2022-LHC-01332 and OALJ Case No. 2023-LHC-00118 be DISMISSED WITH PREJUDICE.

2.    That Jackson's motion to dismiss Horizon's complaint, Doc. 12, be DENIED.

3.    That Horizon's motion to strike, Doc.13, Jackson's "Notice of a Constitutional Challenge to a Statute" be GRANTED.

4.    That the clerk close the file.

At Pensacola, Florida, this 26th day of April, 2024.

_/s/ Hope Thai Cannon_
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

[13] Jackson also argues Horizon's motion to strike should be denied because Horizon failed to comply with Local Rule 7.1(B), which requires parties to confer and attempt in good faith to resolve issues with each other before bringing them to the Court. However, Local Rule 7.1(D) states such an attempt is not required when the motion would determine the outcome of a case or a claim. Here, Horizon's motion to strike determines the outcome of Jackson's claim that 29 C.F.R. § 18.86 is unconstitutional and, thus, Horizon was not required to confer with Jackson before filing the motion.

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1.